IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TRUSTEES OF OPERATING ENGINEERS LOCAL 965 HEALTH BENEFIT PLAN, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO. 08-3082 |
| BRIAN J. SHIRLEY d/b/a JAYCO CONSTRUCTION, BRIAN J. SHIRLEY d/b/a JAYCO and JAYCO, INC., an Illinois Corporation, | ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending is the Plaintiffs' motion for partial summary judgment.

The Plaintiffs allege that Defendant Brian J. Shirley failed to terminate his agreement with the Operating Engineers Local Union 965. Because his notice of termination did not comply with the contract's notice provisions, the Plaintiffs contend Shirley is bound by the contract. The Plaintiffs further assert that Jayco, Inc. is the successor to Shirley (a sole proprietor) and had notice of his labor agreement or, in the alternative, that

Shirley remains a sole proprietorship in that he has not operated as a corporation.

The Defendants claim that Brian Shirley was essentially the sole individual performing work falling within the Operating Engineers' jurisdiction, and that he understood he was exempt from contributing to the Plaintiff Funds. To the extent that relief is sought after December 18, 2008, the Defendants assert that Shirley timely terminated the Collective Bargaining Agreements at issue on December 18, 2008. Shirley further alleges there is a genuine issue of material fact as to whether Jayco, Inc. is his legal successor.

## I. BACKGROUND

### (A)

This action arises under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145, and the Labor Management Act of 1947, 29 U.S.C. § 185. Plaintiffs Operating Engineers Local 965 Health Benefit Fund, Operating Engineers Local 965 Apprenticeship and Training Fund and the Central Pension Fund of the International Union of

Operating Engineers are employee benefits plan administered pursuant to the terms and provisions of the Declaration of Trust creating the Funds.

Brian J. Shirley is an Employer engaged in an industry within the meaning of ERISA. On December 4, 2003, Shirley signed the Agreement between the International Union of Operating Engineers Local Union 965 AFL-CIO and the Central Illinois Builders of the AGC Memorandum of Agreement, May 1, 2003 through April 30, 2006 ("the CIB Agreement"). The period of the CIB Agreement was from May 1, 2003, through April 30, 2006. The CIB Agreement was to remain in effect unless one of the "interested parties" provided written notice at least 60 days prior to the expiration date. The CIB Agreement covers and applies to all persons engaged in performing the duties or classifications of work described in Article I of the CIB Agreement. The Standard Form Contract for Adoption of Agreement provides in part, "The parties hereto do hereby adopt all of the provisions and terms of the attached Agreement as the Agreement between the parties."

Brian Shirley did not assign his bargaining rights to the Central

Illinois Builders of the A.G.C. in 2003 or any other employers' association when he signed the CIB Agreement. Accordingly, to adopt the CIB Agreement as their own agreement, Shirley and Operating Engineers Local 965 executed the STANDARD FORM CONTRACT FOR ADOPTION OF AGREEMENT addendum shown on pages 61 through 64 of the CIB Agreement. The STANDARD FORM CONTRACT FOR ADOPTION OF AGREEMENT on page 61 of the CIB Agreement states that:

> The Employer further agrees to be bound by all terms and conditions of any subsequent collective bargaining agreement between the Association and Union unless not less than 90 days and more than 120 days prior to the expiration of this or any subsequent Agreement, the Employer notifies the Union in writing that it revokes its assent to any collective bargaining agreement. In that event, the Employer agrees that any notice served by the Union upon the Association or appropriate mediation service for reopening, termination, or modification of this or any subsequent Agreement shall serve as notice to the Employer.

The Standard Form Area Agreement provides, in Article 37, page 26, that "This Agreement shall be in force and effect from May 1, 2004, through April 30, 2008, and shall remain in effect from year to year thereafter, unless objections are made by a Certified Mail by one or more

of the interested parties at least sixty (60) days prior to the expiration date as set forth above, or the yearly expiration date thereafter." Paragraph 3 of the Standard Form Contract for Adoption of Agreement, on pages 27-28 of the Standard Form Area Agreement, states:

> The individual Employer signatory hereto agrees that it will be bound by all modifications, amendments, extensions, and renewals of this Agreement, as well as any subsequent collective bargaining agreements, unless the signatory Employer gives notice in writing by a Certified Mail upon the Union between one hundred twenty (120) and one hundred fifty (150) days prior to the expiration of this or any subsequent Agreement of its intent not to be bound by the collective bargaining negotiations and agreements reached thereafter.

(B)

On December 18, 2008, a Notice of Termination of the CIB Agreement was sent by Shirley's attorney to the Operating Engineers Local 965 to terminate the CIB Agreement effective May 1, 2009. Shirley believed that this notice terminated his agreements with the Union. There are 133 days between December 18, 2008 and April 30, 2009, the expiration date of the CIB Agreement.

The Defendants allege they timely terminated the Standard Form

Area Agreement by providing the letter dated December 18, 2008 because the Union was notified more than 60 days prior to April 30, 2009, and also because the letter was sent between 120 and 150 days prior to April 30, 2009. The Plaintiffs' acknowledge that it is undisputed the Agreement was terminated for the latter reason.

The Defendants assert that they timely terminated the Building Memorandum of Agreement because the December 18, 2008 letter was sent to the Union more than 60 days prior to the expiration date of April 30, 2009. The Plaintiffs allege that the December 18, 2008, Notice of Termination of the CIB Agreement was ineffective to terminate the agreement in that it was not sent to the Union within the window of not less than 90 days and not more than 120 days prior to the expiration of the CIB Agreement, which was April 30, 2009. The Plaintiffs claim that termination was ineffective because it was sent 133 days prior to expiration. According to the Plaintiffs, the 60-day notice provision was ineffective because Shirley was not an "interested party."

Article XXVII of the Building Memorandum of Agreement provides

for pension plan contributions and requires contributions for each hour "paid for or worked . . . by all Employees covered by this Agreement." Article XXVIII of the Building Memorandum of Agreement provides for contributions to the Health & Welfare Plan. The Agreement requires the Employer to make contributions "for each hour paid for or worked . . . by all Employees covered by this Agreement."

On May 22, 1996, Brian Shirley signed the Participation Agreement to participate in the Operating Engineers Health Benefit Plan. The same day, he signed the Participation Agreement to participate in the Central Pension Fund of the International Union of Operating Engineers. The Defendants allege that Shirley understood no Fund contributions were required for him, and he signed a document presented by the Operating Engineers business agent, Tommy Nassis, that said this. The Operating Engineers dispute this statement as self-serving and an inappropriate reference to state of mind.

(C)

On January 6, 2006, Shirley incorporated Jayco, Inc. David Hensley

provided tax preparation services to Shirley. Hensley discovered that Shirley, a sole proprietorship, had a corporation (Jayco, Inc.) that Shirley had never utilized so he amended the 2007 tax return to file it under the corporation, Jayco, Inc., for the sole purpose of saving Shirley $30,000.00 in taxes. In his deposition, Shirley stated that he has operated as a sole proprietor for the past eighteen years. He stated that his company name is Jayco Construction, Demolition and Snow Removal. Shirley's bank accounts for that company is titled in the name of "Jayco Construction," with his home address listed on the checks. Shirley does not operate as Jayco, Inc. and he has no idea why his bookkeeper set up the corporation.

Shirley's primary business is demolition, sewer repair, water main installation and the tearing out concrete. A backhoe is used in sewer repair, demolition and water main installation. The Plaintiffs allege that Shirley testified in his deposition that he wrecks every building and digs all the holes. He said that Steve Kunz did not dig holes or demolish buildings. Later in his deposition, he admitted that Steve Kunz did operate

equipment. The Defendants note that Shirley testified Kunz operated equipment "once in a blue moon" and might have performed work as a covered operator "five or six hours throughout the last few years."

Shirley testified that he threw all his payroll records in a garbage dumpster in 2008. Sherald Dunham is the Administrative Assistant for the Operating Engineers Local Union 965. The Plaintiffs allege that as a part of her job responsibilities, she maintains the Union's Northstar membership computer database which includes current and former membership information and information on permit operators working out of the Union hall. To be in the database, one has to be qualified to perform the duties or classifications of work described in Article I of the CIB Agreement. The Plaintiffs allege that the following individuals were employed by Shirley and contained in the database file: Steve Kunz; George G. Savage; Brent Grable; Eric W. Grable; Hershel J. Place; Steve McLean; and Clyde Vetter. The Defendants dispute these allegations, claiming that the database does not state that the individuals listed were employed by Shirley. They further allege the information is immaterial because the fact that certain individuals

are or were members of the Operating Engineers does not establish that Plaintiffs were owed any contributions by the Defendants.

The Plaintiffs note that Shirley provided some time sheets for employees. The time sheets include what appear to be references to work performed by employees Steve Kunz, George G. Savage, Brent Grable, Paul Oberreiter, and Beau Kunz. The Defendants claim these facts are immaterial. There is no indication of the dates of the work alleged or that it was within the jurisdiction of the Operating Engineers. Thus, the Plaintiffs claim the allegations are not connected with the claims in this case and are not material.

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Sellers v. Zurich American ins. Co., 627 F.3d 627, 631 (7th Cir. 2010). The Court construes all inferences in favor of the non-moving party. See id.

B. Termination of CIB Agreement

The Plaintiffs allege that Brian Shirley's notice of termination sent to the Operating Engineers Local 965 ("the Union") did not comply with the notice provisions of the CIB Agreement. The Union and the Central Illinois Builders of the A.G.C negotiated a labor agreement. The CIB Agreement would remain in effect from May 1, 2003, and April 30, 2006, and would continue after the expiration date unless one of the interested parties provided written notice of termination at least 60 days prior to the expiration date. Thus, the Plaintiffs contend that the 60-day notice provision applied only to the original parties–the Union and the Central Illinois Builders of the A.G.C..

The Plaintiffs state that, to adopt the CIB Agreement as their own agreement, on December 4, 2003, Shirley and the Union executed the STANDARD FORM CONTRACT FOR ADOPTION OF AGREEMENT addendum shown on pages 61 through 64 of the CIB Agreement, which states in part:

> The employer further agrees to be bound to all the terms and conditions of any subsequent collective bargaining agreement

between the Association and Union unless not less than 90 days and not more than 120 days prior to the expiration of this or any subsequent Agreement, the Employer notifies the Union in writing that it revokes its assent to any future collective bargaining agreement.

On December 18, 2008, Brian Shirley, through his counsel, sent a Notice of Termination of the CIB Agreement to the Union to terminate the agreement effective May 1, 2009. Because the Notice was sent more than 120 days prior to April 30, 2009–it was sent 133 days prior–the Plaintiffs assert that the Notice of Termination was ineffective and Shirley is contractually bound by the CIB Agreement.

The Defendants allege that by signing the Standard Form Contract for Adoption of Agreement, Brian Shirley became a party to it. Morever, the Defendants claim he was a party to the Building Memorandum of Agreement. As an "interested party," the Defendants assert that Shirley could terminate the agreement by providing at least 60 days notice to the Union before the expiration date of the agreement.

The Defendants acknowledge that the Standard Form Contract for Adoption of Agreement found in the two collective bargaining agreements

12

has different notice periods, either 120–150 days prior to expiration or 90–120 days prior to expiration, respectively. The Defendants allege that the only plausible reason for the longer notice period is to allow the union and any multi-employer association to know that an employer has either chosen to bargain individually or is terminating the agreement before the union and multi-employer association undertake bargaining for a successor agreement. In this case, that reason is irrelevant because the Defendants did not assign bargaining rights.

The Defendants claim that termination of the Standard Form Area Agreement was effective under either notice period, and the Plaintiffs' argument that too much notice was given should be rejected.

The Defendants allege that Plaintiffs are wrong for multiple reasons. Because Shirley did not assign bargaining rights to Central Illinois Builders of A.G.C., there is no logical reason for him to be bound by the longer notice period found in the Standard Form Contract for Adoption of Agreement. Additionally, the Defendants assert that giving more notice than allowed by the "window" in that Agreement actually promotes rather

than hinders stable labor relations. The Defendants rely on <u>Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Services, Inc.</u>, 854 F.2d 1074 (7th Cir. 1998)[1], wherein the underlying collective bargaining agreement had an "evergreen" clause requiring the parties to provide at least sixty days notice before the expiration date. The Defendant contends that although the employer provided well over sixty days notice, it was found to have effectively terminated the collective bargaining agreement on its expiration date. The Court concludes that <u>Gerber</u> is of little relevance here. The notice provisions are not the same. The issue here is whether Brian Shirley was an "interested party." If so, then he complied with the provision by providing more than sixty days notice. If not, the question is whether there was another relevant period of time–such as the 90–120 day period provided in the Standard Form Contract for Adoption of Agreement.

It was on December 4, 2003, that Brian Shirley signed the CIB

---

[1] Rehearing was subsequently granted and judgment was vacated. See <u>Central States Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc.</u>, 864 F.2d 561 (7th Cir. 1989).

Agreement between the Union and the Central Illinois Builders of A.G.C. The period of the CIB Agreement was from May 1, 2003, through April 30, 2006, though it would continue to remain in effect unless one of the parties timely objected. Shirley did not assign his bargaining rights to the Central Illinois Builders of the A.G.C. in 2003 when he signed the CIB Agreement. For this reason, the Defendants claim there is no logical reason for him to be bound by the longer notice provision. In order to adopt the CIB Agreement as their own agreement, Shirley and the Union executed the STANDARD FORM CONTRACT FOR ADOPTION OF AGREEMENT addendum shown on pages 61 through 64 of the CIB Agreement. This addendum provides that the Employer "agrees to be bound to all the terms and conditions," unless it "revokes its assent to any future collective bargaining agreement" between 90 and 120 days prior to the expiration of the Agreement on April 30, 2009.

    Regardless of their reasons, the parties agreed to the 90–120 day termination window. Although the Building Memorandum of Agreement was effective on May 1, 2003, Shirley was initially not a party to that

Agreement. He agreed to adopt it eight months later on December 4, 2003. The Court concludes that the terms and conditions regarding the termination of the Standard Form Contract for Adoption of Agreement which were agreed to at that time should govern. A contract must be "read as a whole with all its parts given effect, and related documents are read together." Temme v. Bemis Co., Inc., 622 F.3d 730, 734 (7th Cir. 2010) (internal quotations and citation omitted). If the parties had intended for the 60-day termination provision of the CIB Agreement to apply, they would not have included the 90 to 120 window in the Standard Form Contract for Adoption of Agreement.

The 60-day termination provision applied to the "interested parties" to the Building Memorandum of Agreement. Scott Larkin, the Director of Labor Relations for the Central Illinois Builders of the AGC, participated and negotiated the Building Memorandum of Agreement. According to his affidavit, the term "interested parties" is intended to apply to the Central Illinois Builders of the AGC, its members and employers who, unlike Shirley, have assigned their bargaining rights to the Central Illinois Builders

16

and the Union. Larkin further states that the Standard Form Contract for Adoption of Agreement is not part of the original Building Memorandum of Agreement. Rather, it is a separate form used by the Union and employers to adopt the Building Memorandum of Agreement. This is consistent with the affidavit of Mike Zahn, the Union's Business Manager who also participated in and negotiated the Building Memorandum of Agreement.

Based on the foregoing, Shirley was not an interested party and thus could not terminate the agreement by providing at least 60 days notice. Therefore, the notification on December 18, 2008, was not effective to terminate the Agreement as of April 30, 2009. Pursuant to the Standard Form Contract for Adoption of Agreement, Shirley was required to notify the Union between 90 and 120 days prior to April 30, 2009. Although this result may seem harsh, the Court declines to re-write the parties' agreement.

### III. CONCLUSION

After considering the arguments of the parties and viewing all inferences in a light most favorable to the Defendants, the Court concludes

that there are no genuine issues of material fact and Brian Shirley is bound to the CIB Agreement. The Defendants do not dispute the Plaintiffs' allegation that Shirley remains a sole proprietorship.

The Court notes that new counsel has not yet entered an appearance for the Defendants. Therefore, a status conference will be set for December 5, 2011, to enable the Defendants to obtain counsel before the trial on damages is scheduled.

<u>Ergo</u>, the Plaintiffs' motion for partial summary judgment [d/e 49] is ALLOWED. The Court concludes that Defendant Brian J. Shirley is bound to the Agreement between the International Union of Operating Engineers Local Union 965 AFL-CIO and the Central Illinois Builders of the A.G.C. Memorandum of Agreement.

The Court further finds that Brian J. Shirley remains a sole proprietorship in that he has not operated as a corporation.

This case is hereby set for a status conference on December 5, 2011, at 4:00 p.m. At that time, the matter of damages will be set for trial.

ENTER: September 28, 2011

FOR THE COURT:

                                                                                                  s/Richard Mills
                                                                  United States District Judge